AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.    1:26-MJ-0015 |
| JULIALIVGRACE@GMAIL.COM Stored at Premises Controlled by Apple Inc. | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A to Affidavit

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B to Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1361 | Damage to Government Property; Knowingly Engaging in Act of Violence Against |
| 18 U.S.C. 1752(a)(4) | a Person or Property on Restricted Grounds; Assaulting, Resisting or Impeding |
| 18 U.S.C. 111(a)(1) | certain Officers or Employees |

The application is based on these facts:

See Affidavit and Attachments

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

_____, Special Agent FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
**FaceTime Video**_____ *(specify reliable electronic means).*

Date:    **Jan 11, 2026**_____

City and state:    Cincinnati, Ohio_____

*Stephanie K. Bowman*
*Judge's signature*

Stephanie K. Bowman, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Apple account:

- julialivgrace@gmail.com

that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Apple Inc. ("Apple)**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose to the government for each account or identifier listed in Attachment A the following information from November 5, 2024 to January 5, 2026, unless otherwise indicated:

    a. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

    b. All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

    c. The contents of all emails associated with the account from November 5, 2024 to January 6, 2026, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted

emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d.   The contents of all instant messages associated with the account from November 5, 2024 to January 5, 2026, to the present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e.   The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f.   All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g.   All records and information regarding locations where the account or devices associated with the account were accessed between November 5, 2024 to January 5, 2026 including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h.   All records pertaining to the types of service used;

i.   All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

      j.    All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant to the following:

███████████

Special Agent
Federal Bureau of Investigation
████████████

Cincinnati, Ohio 45236
████████████

**II.    Information to be seized by the government**

All records in the Account described in Attachment A that relate to violations of 18 U.SC. § 1361, 18 U.S.C § 1752 (a)(4) and 18 U.S.C § 111(a)(1) and (b) and involve WILLIAM DEFOOR, from November 5, 2024, through January 5, 2026, including:

    a.    Information related to other unknown persons that may have had knowledge or influence of the actions of DEFOOR.

    b.    Digitally stored files related to threat ideology and unusual directed interests toward specific Protectees of the USSS.

    c.    Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

2.    Evidence of user attribution showing who used or was registered to the Accounts at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.    Records evidencing the use of the Internet including:

    a.    records of Internet Protocol addresses used;

    b.    records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH:<br><br>JULIALIVGRACE@GMAIL.COM<br><br>THAT ARE STORED AT PREMISES CONTROLLED BY APPLE INC | 1:26-MJ-0015<br>Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, ██████████████, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises owned, maintained, controlled, or operated by Apple Inc ("Apple"), an electronic communications service and/or remote computing service provider headquartered at One Apple Park Way, Cupertino, California 95014-2084.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since January of 2021. I completed the training requirements to become an FBI agent in June of

2021 at Quantico, Virginia. During that training, I learned how to investigate firearms offenses, controlled substance offenses, white collar crimes, and other violations of federal law. I am currently assigned to the Joint Terrorism Task Force (JTTF) squad at the FBI Cincinnati Field Office. My duties include conducting criminal investigations involving violations of federal law contained in Title 18 and Title 21 of the United States Code.

3.     Prior to joining the FBI, I was a Department of Defense (DOD) Intelligence Analyst with the United States Air Force. While serving as an Intelligence Analyst, I was responsible for correlating and fusing data from multiple intelligence sources to form analytical assessments in support of the United States Air Force. Prior to working as an Intelligence Analyst for the United States Air Force, I served as an FBI Operational Support Technician. While serving as an Operational Support Technician, I supported special agents on a variety of investigative tasks and provided real-time operational support for special agents conducting arrests, searches, and surveillance operations in the field. My formal education consists of a Master of Science degree in Criminal Justice from the University of Cincinnati and a Bachelor of Arts in International Studies and a minor in the Russian language from the Ohio State University.

4.     I have participated in the execution of federal search warrants and federal arrest warrants in relation to investigations into cyberstalking, interstate communications violations, financial fraud, terrorism matters, violent gangs, and violent crimes to include prohibited possession of firearms, the unlawful possession, possession with the intent to distribute, and actual distribution of controlled substances, as well as the associated conspiracies in violation of Title 21, United States Code, Sections 841(a)(1) and 846. I have also been involved with the reviewing several search warrant returns for social media and electronic mail accounts, as well as the seizure

and review several computers, storage media, and other digital media devices for relevant evidence in connection to these investigations.

5.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1361 (Damage to Government Property), § 18 U.S.C. §1752(a)(4) (Knowingly Engaging in Act of Violence Against a Person or Property on Restricted Grounds), and 18 U.S.C. §111(a)(1) and (b) (Assaulting, Resisting or Impeding certain Officers or Employees), have been committed by WILLIAM DEFOOR. There is also probable cause to search the information described in Attachment A for evidence, fruits, and instrumentalities, of these crimes, as described in Attachment B.

## JURISDICTION

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is a "district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8.      The United States Secret Service ("USSS") provides 24-hour Physical Security of a Protective Residence located at an undisclosed address in Cincinnati, Hamilton County, Ohio, within the jurisdiction of the Southern District of Ohio. This Residence is the private home of a USSS Protectee, authorized full-time protection under 18 USC § 3056 for the Primary Protectee and all family members. The USSS has a contingent of Special Agents assigned to this residence

for the purpose of mitigating threats to the property at any time and/or to the Protectees when they visit the residence. The most recent visit of the Protectees concluded at approximately 3:00 PM on January 4, 2026.

9.  On January 5, 2026, at approximately 12:15 AM, a person later identified as DEFOOR was observed by USSS Agents running westbound along the front fence line of the Protected Residence. DEFOOR breached the property line at the driveway and attempted to break the driver's side window of a US Government Unmarked Police Vehicle blocking the driveway entrance. DEFOOR was armed with an unknown (at the time) impact weapon. Based on DEFOOR's movements, it appeared as though he was aware of the surroundings of the Protected Residence and was making purposeful movements toward the location.

10.  A USSS Special Agent (SA) was posted in the driveway of the Protected Residence and immediately observed DEFOOR'S actions. The USSA SA identified himself/herself as "POLICE" and "SECRET SERVICE" with loud clear commands to stop and drop the weapon. The USSS SA later reported he/she believed DEFOOR to have been armed with a hatchet at first observation.

11.  DEFOOR refused to obey law enforcement lawful commands and advanced toward SA ███ with the impact weapon still in hand. The USSS SA later reported fearing for his/her safety and advised he/she acquired a tactical position to further engage DEFOOR with commands to stop. The USSS SA reported giving repeated verbal commands identifying himself/herself as "POLICE" and "SECRET SERVICE," while ordering DEFOOR to drop the weapon.  DEFOOR ignored all commands and began to use a hammer to break glass windows across the front of the Protected Residence. DEFOOR broke multiple glass panels in three large,

historic windows. DEFOOR also caused damage to enhanced security assets owned by the US Government that were part of the security system of each window.

12. The USSS SA continued to give lawful orders and instructions to DEFOOR while he was using the hammer to attack the windows. The USSS SA feared for his/her safety in approaching DEFOOR armed with a hammer and violently causing property damage to the Protected Residence.

13. DEFOOR eventually dropped the hammer on the ground in front of the front porch of the Protected Residence and fled south and east on the public sidewalk. Senior Special Agent ███████ and Special Agent ███████ had already made notification to the Cincinnati Police Department via a 911 call and police radio. USSS Supervisory Special Agent (SSA) ███ was responding to intercept DEFOOR and made contact with him on the city sidewalk just east of the Protected Residence. Cincinnati Police also arrived at this time and DEFOOR was taken into custody.

14. Upon further inspection, damage was noted on the driver's side window of the US Government Owned Unmarked Police Vehicle consisting of marks and abrasions to the glass. DEFOOR struck the window three times with the hammer. Further inspection also revealed 12 individual panels of glass fully broken across three larger windows on the front of the Protected Residence. In addition, DEFOOR'S hammer strikes also caused damage to the enhanced security assets on each window owned by the US Government and valued over $28,000.

15. On January 5, 2026, USSS SA ███████ submitted to the United States Magistrate Court an affidavit in support of a criminal complaint. Based on the affidavit, the Magistrate Court found probable cause to arrest DEFOOR for violations of 18 U.S.C. §1361 (Damage to Government Property), 18 U.S.C. §1752(a)(4) (Knowingly Engaging in Act of

Violence Against a Person or Property on Restricted Grounds), and 18 U.S.C. §111(a)(1) and (b) (Assaulting, Resisting or Impeding certain Officers or Employees), in Case Number 1:26-mj-0008.

16.    The USSS came into in the lawful possession of five (5) electronic devices belonging to DEFOOR, which includes a Samsung cell phone and a Google Pixel cell phone (the "Cell Phones"). They came into the USSS' possession in the following way:  On January 5th, 2026, USSS Special Agent ███████████ met with ████████████████████ ████████. ███████████ has full legal guardianship of WILLIAM DEFOOR issued by Judge Ralph Winkler, Probate Court of Hamilton County, Ohio, and authorized October 8th, 2024. The Case number ordering guardianship is found in 2024003563 and calls for an indefinite time period with no expiration date. ███████████ handed over control of the devices to the USSS.  She identified the devices as belonging to and used by █████, WILLIAM DEFOOR. She then signed a consent form for the devices which authorized removal from her home and consent to electronically search all devices. A warrant was then issued for the devices under case number 1:26-mj-00010. Among the devices obtained by the USSS was an Apple MacBook Air which is password-protected. The FBI has been working with the USSS throughout the investigation and has assumed primary investigative responsibilities in certain areas. As such, the FBI is currently working on obtaining access to the contents of the MacBook Air. Initial review of available information on the MacBook Air showed that there is approximately sixty (60) to one hundred (100) gigabytes of data.

17.    An FBI database search for an e-mail address associated with DEFOOR, julialivgrace@gmail.com (the "TARGET ACCOUNT") showed it as being associated with an

Apple account. On January 9, 2026, FBI Agents served a Federal Grand Jury Subpoena (FGJS) to Apple Inc. for the TARGET ACCOUNT. Responsive results from Apple Inc. are pending.

18.    Also on January 6, 2026, FBI Agents served a FGJS to Google LLC for telephone number 513-516-9248 (the "GOOGLE ACCOUNT") which was identified to be associated with DEFOOR. Responsive results, among other things, indicated the following: 1) The Google Account ID was 359502616164, 2) The subscriber name was "Julia DeFoor[1], " 3) The e-mail address associated with the GOOGLE ACCOUNT was the TARGET ACCOUNT, 4) The GOOGLE ACCOUNT was created on September 19, 2023, 4) Prior to the incident, the GOOGLE ACCOUNT was logged into frequently, ranging from daily to every few days, starting in approximately April 2025, 5) The services used by the GOOGLE ACCOUNT include Gmail, Android, Calendar, YouTube, G1 Phone Backup, Google Payments, Google Chat, Google My Maps, Google Keep, and Google Docs.

19.    Based on my training and experience, I know that subjects who threaten, attack, or otherwise engage in violent activity directed towards political figures or their property will conduct online searches of the residences, movements and locations of such figures.  They become familiar with the political figures homes and will research publicly available information about the surroundings, to include ingress and egress of properties, as well as communicate with others about their activities.  Based on DEFOOR's deliberate movements in the early morning hours of January 5, 2026, it appears as though he was familiar with the surroundings and was deliberate in his movements toward the property.  When he was placed into custody, he did not have any cellular devices on his person or in the backpack he had carried and was on foot as he

---

[1] When USSS SAs attempted to speak with DEFOOR following the January 5, 2026 incident at ▮▮▮▮ residence, he identified himself as "Julia."

approached the Protected Residence.  Based on my training and experience, this movement indicates DEFOOR took to memory his path to his target location. Based on my training and experience, DEFOORs actions are consistent with someone who researched the location of the target he intended to attack, to include a particular path to the location.  The TARGET ACCOUNT is likely to contain such research, planning and preparation.

20.     WILLIAM DEFOOR traversed over 3.3 miles on foot, or by other unknown method, in the overnight hours, in cold-weather conditions, from his home to the Protected Residence. DEFOOR seemingly accomplished this journey without assistance of physical or electronic map or other navigation aid. DEFOOR traversed this distance with a hammer and displayed a specific and calculated plan of attack against a protected residence/ Protectee of the United States Secret Service. I believe that searching the TARGET ACCOUNT will reveal specific details about pre-planning a route from DEFOOR'S home to the Protected Residence, pre-planning of the suspected breach of the Protected Site, intent to carry out property damage to Federal Property or other crimes related to threats against Federally Protected Persons, and any co-conspirators or associates that may have been involved in the pre-planning.

## BACKGROUND CONCERNING APPLE[2]

21.     Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

22.     Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:

a.      Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.      iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c.      iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device. For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com. iCloud Photo Library and My Photo Stream can be used to store and manage images and videos

---

[2] The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers. iCloud Drive can be used to store presentations, spreadsheets, and other documents. iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices. iCloud Backup allows users to create a backup of their device data. iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

d.      Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

e.      Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

f.      Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location. g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on

iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

g. App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

23. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

24. Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated

with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

25.     Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

26.     Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card. Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage. Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number. In addition, information about a user's computer is captured when iTunes is used on that computer to play content

associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com. Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

27. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space. That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

28. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to

establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

29.     For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

30.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geolocation, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

31.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a

plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

32.     Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation

33.     Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

34.     Based on the forgoing, I request that the Court issue the proposed search warrant.

35.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Apple. Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

36.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of

the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on January _11_, 2026. **via electronic means, specifically Facetime video.**



Stephanie K. Bowman

UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Apple account:

- julialivgrace@gmail.com

that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Apple Inc. ("Apple)**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose to the government for each account or identifier listed in Attachment A the following information from November 5, 2024 to January 5, 2026, unless otherwise indicated:

    a.   All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

    b.   All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

    c.   The contents of all emails associated with the account from November 5, 2024 to January 6, 2026, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted

emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d. The contents of all instant messages associated with the account from November 5, 2024 to January 5, 2026, to the present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g. All records and information regarding locations where the account or devices associated with the account were accessed between November 5, 2024 to January 5, 2026 including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h. All records pertaining to the types of service used;

i. All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

      j.    All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant to the following:

████████████

Special Agent

Federal Bureau of Investigation

████████████████

Cincinnati, Ohio 45236

████████████

**II.     Information to be seized by the government**

All records in the Account described in Attachment A that relate to violations of 18 U.SC. § 1361, 18 U.S.C § 1752 (a)(4) and 18 U.S.C § 111(a)(1) and (b) and involve WILLIAM DEFOOR, from November 5, 2024, through January 5, 2026, including:

   a. Information related to other unknown persons that may have had knowledge or influence of the actions of DEFOOR.

   b. Digitally stored files related to threat ideology and unusual directed interests toward specific Protectees of the USSS.

   c. Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

2.     Evidence of user attribution showing who used or was registered to the Accounts at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.     Records evidencing the use of the Internet including:

   a. records of Internet Protocol addresses used;

   b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Apple Inc. ("Apple"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Apple. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Apple, and they were made by Apple as a regular practice; and

b.      such records were generated by Apple's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Apple in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Apple, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

2

_____          _____
Date                               Signature

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means      ☐ Original     ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>JULIALIVGRACE@GMAIL.COM<br>Stored at Premises Controlled by Apple Inc. | )<br>)<br>)<br>)   Case No.   1:26-MJ-0015<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Southern _____ District of _____ Ohio _____
*(identify the person or describe the property to be searched and give its location)*:

JULIALIVGRACE@GMAIL.COM, Stored at Premises Controlled by Apple Inc.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B to Affidavit

**YOU ARE COMMANDED** to execute this warrant on or before    January 25, 2026    *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Stephanie K. Bowman _____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     6:17 PM, Jan 11, 2026        *Stephanie K. Bowman*
                                                  *Judge's signature*

City and state:     Cincinnati, Ohio              Stephanie K. Bowman, U.S. Magistrate Judge
                                                           *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Apple account:

- julialivgrace@gmail.com

that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Apple Inc. ("Apple)**

To the extent that the information described in Attachment A is within the possession, custody, or control of Apple, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Apple, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Apple is required to disclose to the government for each account or identifier listed in Attachment A the following information from November 5, 2024 to January 5, 2026, unless otherwise indicated:

a.  All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers, email addresses (including primary, alternate, rescue, and notification email addresses, and verification information for each email address), the date on which the account was created, the length of service, the IP address used to register the account, account status, associated devices, methods of connecting, and means and source of payment (including any credit or bank account numbers);

b.  All records or other information regarding the devices associated with, or used in connection with, the account (including all current and past trusted or authorized iOS devices and computers, and any devices used to access Apple services), including serial numbers, Unique Device Identifiers ("UDID"), Advertising Identifiers ("IDFA"), Global Unique Identifiers ("GUID"), Media Access Control ("MAC") addresses, Integrated Circuit Card ID numbers ("ICCID"), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifiers ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identities ("IMSI"), and International Mobile Station Equipment Identities ("IMEI");

c.  The contents of all emails associated with the account from November 5, 2024 to January 6, 2026, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted

emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the emails, and all attachments;

d. The contents of all instant messages associated with the account from November 5, 2024 to January 5, 2026, to the present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

e. The contents of all files and other records stored on iCloud, including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWork (including Pages, Numbers, Keynote, and Notes), iCloud Tabs and bookmarks, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;

f. All activity, connection, and transactional logs for the account (with associated IP addresses including source port numbers), including FaceTime call invitation logs, messaging and query logs (including iMessage, SMS, and MMS messages), mail logs, iCloud logs, iTunes Store and App Store logs (including purchases, downloads, and updates of Apple and third-party apps), My Apple ID and iForgot logs, sign-on logs for all Apple services, Game Center logs, Find My iPhone and Find My Friends logs, logs associated with web-based access of Apple services (including all associated identifiers), and logs associated with iOS device purchase, activation, and upgrades;

g. All records and information regarding locations where the account or devices associated with the account were accessed between November 5, 2024 to January 5, 2026 including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps;

h. All records pertaining to the types of service used;

i. All records pertaining to communications between Apple and any person regarding the account, including contacts with support services and records of actions taken; and

j.    All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including, but not limited to, the keybag.txt and fileinfolist.txt files).

Apple is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant to the following:

████████████

Special Agent
Federal Bureau of Investigation

████████████

Cincinnati, Ohio 45236

████████████

**II.      Information to be seized by the government**

All records in the Account described in Attachment A that relate to violations of 18 U.SC. § 1361, 18 U.S.C § 1752 (a)(4) and 18 U.S.C § 111(a)(1) and (b) and involve WILLIAM DEFOOR, from November 5, 2024, through January 5, 2026, including:

    a. Information related to other unknown persons that may have had knowledge or influence of the actions of DEFOOR.

    b. Digitally stored files related to threat ideology and unusual directed interests toward specific Protectees of the USSS.

    c. Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

2.      Evidence of user attribution showing who used or was registered to the Accounts at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Records evidencing the use of the Internet including:

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.